IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

JENNIFER LYNN JORDAN                                                              PLAINTIFF

vs.                         Civil No. 1:16-cv-01065-BAB

NANCY A. BERRYHILL                                                     DEFENDANT
Acting Commissioner, Social Security Administration[1]

**MEMORANDUM OPINION**

Jennifer Lynn Jordan ("Plaintiff") brings this action under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("The Act").

The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (ECF No. 7).[2] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1.**      **Background:**

Plaintiff protectively filed her disability application for DIB on August 1, 2013. (ECF No. 10, p. 29). In her application, Plaintiff alleges being disabled due to soto seizures, high blood

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The docket numbers for this case are referenced by the designation "ECF No. ___." The transcript pages for this case are referenced by the designation "ECF No. ___, p. ___."

1

pressure, diabetes, migraines, depression, racing heart, high cholesterol, and high triglycerides. (ECF No. 10, p. 248). Plaintiff alleges an onset date of October 26, 2009. (ECF No. 10, pp. 29, 257). This application was denied initially and again upon reconsideration. (ECF No. 10 pp. 144-78).

Thereafter, Plaintiff requested an administrative hearing on her denied applications, and this hearing request was granted. (ECF No. 10 p. 186-87). Plaintiff's administrative hearing was held on October 23, 2014, in Little Rock, Arkansas. (ECF No. 10, pp. 118-43). Plaintiff was present and was represented by Mary Thomason. *Id.* Plaintiff, Plaintiff's mother Charlotte Williams, and vocational expert ("VE") Mack Welch testified at this hearing. *Id.* At the time of this hearing, Plaintiff was thirty-eight years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c). (ECF No. 10, p. 121). As for her level of education, Plaintiff earned a high school diploma. *Id.*

After this hearing, on April 3, 2015, the ALJ entered an unfavorable decision denying Plaintiff's application for DIB. (ECF No. 10, pp. 26-39). In this decision, the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2014. (ECF No. 10, p. 31, Finding 1). The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since October 26, 2009, her alleged onset date. (ECF No. 10, p. 31, Finding 2). The ALJ determined Plaintiff had the following severe impairments: migraine headaches, pseudoseizures, depression, anxiety, and diabetes. (ECF No. 10, p. 31, Finding 3). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Part 404 ("Listings"). (ECF No. 10, pp. 31-33, Finding 4).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (ECF No. 10,

pp. 33-37, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found her claimed limitations were not entirely credible. *Id.* Second, the ALJ determined Plaintiff retained the RFC to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations. She can occasionally stoop, crawl and kneel but must avoid work requiring climbing or balancing. She must avoid exposure to extreme heat and loud noise. Due to pseudoseizures, [Plaintiff] should avoid working at unprotected heights or around moving or dangerous machinery. [Plaintiff] retains the ability to perform work where interpersonal contact is incidental to the work performed. Incidental is defined as interpersonal contact requiring a limited degree of interaction, such as meeting and greeting the public, answering simple questions, accepting payment and making change. The complexity of tasks can be learned by demonstration or repetition within 30 days, with few variables, requires little judgment and the supervision required is simple, direct and concrete.

*Id*.

The ALJ then determined Plaintiff was unable to perform any Past Relevant Work ("PRW"). (ECF No. 10, p. 37, Finding 6). The VE testified at the administrative hearing regarding this issue. (ECF No. 10, pp. 140-43). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy Plaintiff could perform, such as a cashier, which has a DOT code of 211.462-010, with approximately two hundred thousand (200,000) jobs in the national economy and approximately one thousand one hundred (1,100) jobs in the state of Arkansas, and as a food order clerk, which has a DOT code of 209.567-014, with approximately fifteen thousand (15,000) jobs in the national economy and approximately one hundred (100) jobs in the state of Arkansas. (ECF No. 10, p. 38, Finding 10). Because jobs exist in significant numbers in the national economy which Plaintiff can perform, the ALJ also determined Plaintiff had not been under a disability, as defined by the Act, from October 26, 2009, through December 31, 2014. (ECF No. 10, p. 38, Finding 11).

3

Thereafter, on April 13, 2015, Plaintiff requested review of the hearing decision by the Appeals Council. (ECF No. 10, p. 24). The Appeals Council denied Plaintiff's request on June 7, 2016. (ECF No. 10, pp. 5-9). On July 8, 2016, Plaintiff filed the present appeal with this Court. (ECF No. 1). The Parties consented to the jurisdiction of this Court on July 14, 2016. (ECF No. 5). This case is now ready for decision.

**2.     Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *see* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *see Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001).

As long as there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *see Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *see Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *see Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A). The Act defines a "physical or

mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3). A plaintiff must show his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *see* 42 U.S.C. §§ 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity ("RFC") to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform. *see Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)(4). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *see* 20 C.F.R. §§ 404.1520(a)(4)(v).

**3.     Discussion:**

In her appeal brief, Plaintiff specifically raises a single issue for reversal: the ALJ failed to consider the combined effect of all of Plaintiff's impairments. (ECF No. 11, pp. 12-17). Plaintiff, however, makes the following arguments: (1) the ALJ improperly considered the Medical-Vocational Guidelines; (2) the ALJ improperly assessed Plaintiff's mental RFC; (3) the ALJ improperly determined Plaintiff could return to her PRW; (4) the ALJ conducted an improper

5

credibility analysis under *Polaski*; and (5) the ALJ erred at Step Five of the Sequential Evaluation Process. *Id.*

    A.    **Subjective Complaints and Credibility Analysis**

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529.[3] *see Shultz v. Astrue,* 479 F.3d 979, 983 (2007). The factors to consider are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *see Polaski,* 739 at 1322.

The factors must be analyzed and considered in light of the claimant's subjective complaints of pain. *see Id.* The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. *see Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). As long as the ALJ properly applies these five factors and gives several valid reasons for finding that Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. *see Id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

---

[3] Social Security Regulations 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929 require the analysis of two additional factors: (1) "treatment, other than medication, you receive or have received for relief of your pain or other symptoms" and (2) "any measures you use or have used to relieve your pain or symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." However, under *Polaski* and its progeny, the Eighth Circuit has not yet required the analysis of these additional factors. *see Shultz v. Astrue,* 479 F.3d 979, 983 (2007). Thus, this Court will not require the analysis of these additional factors in this case.

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors. *see Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998). The inability to work without some pain or discomfort is not a sufficient reason to find Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain Plaintiff experiences precludes the performance of substantial gainful activity. *see Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

The ALJ properly applied the factors articulated in *Polaski* and gave several good reasons for finding that Plaintiff's subjective complaints were not entirely credible. The ALJ noted Plaintiff's symptoms were frequently controlled by medications without significant side-effects. For example, The ALJ noted Plaintiff's Depakote, Prozac, Zanax, Frova, Cymbalta, and Glyburide controlled Plaintiff's migraine headaches, depression, and anxiety. (ECF No. 10, pp. 34-35, 124, 372, 529, 618, 620, 625). Plaintiff regularly denied suffering side effects from her medications. (ECF No. 10, pp. 246, 268, 278, 288, 293-94, 310). Plaintiff also endorsed a lack of motivation to work and a preference to continue being a housewife and caring for her child. (ECF No. 10, pp. 36, 669).

The ALJ also examined Plaintiff's activities of daily living. (ECF No. 10, pp. 32, 36). He noted Plaintiff's husband was only home six months per year and so she regularly lived alone with her minor child. (ECF No. 10, p. 32). The ALJ noted Plaintiff could care for her child and pet dog, that she independently managed her personal needs, and that she could cook meals, clean house, do the laundry, make the bed, drive, perform yard work, and manage her financial affairs with assistance. (ECF No. 10, pp. 32, 36). The ALJ also noted Plaintiff attended church, used her

7

computer, spent time with family, played with her child in the park, and helped care for her own parents and their pet dog. (ECF No. 10, pp. 32, 36). Despite Plaintiff's extensive daily activities and interaction with others, the ALJ did not entirely discount Plaintiff's subjective complaints. For example, despite Plaintiff's extensive activities of daily living and engagement with others, the ALJ nevertheless limited Plaintiff's RFC to unskilled work where interpersonal contact is incidental to the work performed and supervision that is simple, direct, and concrete. (ECF No. 10, p. 33).

I find substantial evidence supports the ALJ's credibility assessment and because the ALJ provided multiple valid reasons for discounting Plaintiff's subjective complaints, I defer to the ALJ's credibility determination. *see Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007) (this Court defers to the ALJ's credibility determination when it is supported by good reasons and substantial evidence).

    **B.**    **Mental RFC and Physician Opinions**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545. A disability claimant has the burden of establishing his or her RFC. *Vossen v. Astrue*, 612 F. 3d 1011, 1016 (8th Cir. 2010). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must

be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Plaintiff argues only that the ALJ improperly analyzed Plaintiff's mental impairments because the consultative examiner upon which the ALJ relied, Dr. Charles Spellman, was a biased shill for the SSA. (ECF No. 11). I note that Dr. Spellman's Mental Diagnostic Evaluation of Plaintiff was electronically signed on December 31, 2013. (ECF No. 10, p. 673). Plaintiff's administrative hearing was held on October 23, 2014. (ECF No. 10, p. 118). At the outset of the hearing, the ALJ indicated a range of exhibits which would be made a part of the Administrative record, including Dr. Spellman's Mental Diagnostic Evaluation, without objection. (ECF No. 10, p. 120). Plaintiff's attorney responded, "Yes, sir. No objection." *Id.* Plaintiff offers no evidence to contradict Dr. Spellman's assessment aside from general averments that Plaintiff "did allege the mental impairment of depression," and "does not want to be around people," and more. (ECF No. 11, p. 15). The ALJ specifically determined Plaintiff's depression and anxiety were severe impairments. (ECF No. 11, p. 31). The ALJ's RFC determination included limitations related to Plaintiff's mental impairments which were consistent with Dr. Spellman's assessment, particularly that Plaintiff may only perform work where interpersonal contact is incidental to the work performed and the complexity of tasks can be learned by demonstration or repetition within thirty days, with few variables, requires little judgment, and the supervision required is simple, direct, and concrete. (ECF No. 10, pp. 33-37, Finding 5).

The ALJ specifically considered Plaintiff's impairments in combination where the ALJ determined Plaintiff's combination of impairments did not meet or medically equal the severity of one of the impairments in the Listings and when the ALJ made his RFC determination, "[a]fter

careful consideration of the entire record," and, "[having] considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (ECF No. 10, p. 33); *see* Hajek v. *Shalala,* 30 F.3d 89, 92 (8th Cir. 1994) (ALJ properly considered combined effects of a claimant's impairments where ALJ determined the claimant did not have an impairment or combination of impairments that rendered him disabled as defined by the Act); *see also Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1993) (ALJ properly considered combined effects of a claimant's impairments where ALJ separately discussed claimant's physical impairments, mental impairments, complaints of pain, and daily activities). I note that in formulating Plaintiff's RFC, the ALJ fully summarized all of Plaintiff's medical records and separately discussed each of her alleged impairments. Based on the ALJ's synopsis of Plaintiff's medical records and discussion of each of her alleged impairments, I conclude that the ALJ properly considered the combined effects of Plaintiff's impairments, even those which the ALJ determined were non-severe. *see Martise v. Astrue,* 641 F.3d 909, 924 (8th Cir. 2011).

I find the ALJ's RFC determination was based on all relevant evidence in the record, not simply one consulting physician's opinion, despite the weight the ALJ affords the opinion. *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). I note that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of many treating physicians, specialists, examining consultants, as well as those of the non-examining state agency consultants, and set forth the reasons for the weight given to the opinions. *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians") (citations omitted); *Prosch v. Apfel*, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant

or the government, if they are inconsistent with the record as a whole). Based on examination of the record as a whole, I find substantial evidence supports the ALJ's RFC determination.

### C. Medical-Vocational Guidelines

The Medical-Vocational Guidelines, or Grids, "are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." *McCoy v. Astrue*, 648 F.3d 605, 613 (8th Cir.2011) (citing 20 C.F.R. Part 404, Subpt. P, App. 2). The Grids come into play at step five of the analysis, where "the burden shifts to the Commissioner to show that the claimant has the physical residual capacity to perform a significant number of other jobs in the national economy that are consistent with her impairments and vocational factors such as age, education, and work experience." *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir.2001). "If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant Rule or line of the applicable Table." *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir.1993) (internal quotation marks and citation omitted). Generally, when a claimant suffers from nonexertional limitations such as pain, the ALJ cannot rely on the Guidelines; however, the Guidelines are properly used if nonexertional limitations "do not diminish or significantly limit the claimant's [RFC] to perform the full range of Guideline-listed activities," or if the claimant's related subjective complaints are properly discredited. *see Baker v. Barnhart*, 457 F.3d 882, 894-95 (8th Cir. 2006) (quoting *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005)).

Plaintiff argues the ALJ improperly relied on the Grids to direct his decision. (ECF No. 11). Plaintiff's argument is without merit because the ALJ only referenced the Grids to decide whether a specific determination of the transferability of Plaintiff's job skills was necessary. (ECF No. 10,

11

p. 38). The ALJ determined, "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled' whether or not [Plaintiff] has transferable job skills." (ECF No. 10, p. 38, Finding 9). The ALJ proceeded with the sequential evaluation process and relied upon the testimony of a vocational expert to determine there were jobs existing in significant numbers in the national economy Plaintiff could perform. (ECF No. 10, p. 38, Finding 10).

### D. Vocational Expert Testimony and Step Five Analysis

Plaintiff argues the ALJ improperly determined Plaintiff could return to her PRW as a cashier despite the VE's testimony that Plaintiff could not return to her PRW. (ECF No. 11). Plaintiff's argument is without merit.

The ALJ asked the VE about Plaintiff's PRW at the administrative hearing. (ECF No. 10, p. 140). The VE classified Plaintiff's PRW as follows:

> I think it can be summarized under one DOT title. It's retail cashier/stocker/storekeeper and these are all in the retail trade. They're semiskilled, SVP of 4 and they fall into the heavy exertional category. The DOT number is 299.367-014. I can certainly separate out the cashier position if you think it's necessary. . . . And that would summarize the work history, Judge.

*Id.* The ALJ presented a hypothetical to the VE which included the following non-exertional limitation:

> Nonexertionally the individual is able to perform work where personal contact is incidental to the work performed. Incidental being defined as interpersonal contact that requires a limited degree of interaction such as meeting and greeting the public, answering simple questions, accepting payment, making change. . . .

(ECF No. 10, pp. 140-41). The VE stated that Plaintiff could not return to her PRW because the ALJ's hypothetical question specified unskilled work, whereas Plaintiff's PRW exceeded the unskilled level. *Id.* The VE then stated the following:

> Your Honor, I've checked very diligently the options of as I understand Your Honor's hypothetical. Of course exertional level doesn't really matter because you haven't applied that. The other – the hazards, the heat, which is rarely a factor, but it's always included in most of the jobs. With the accumulation of these variables I am not able to identify a job at any exertional level for such an individual.

*Id.* The ALJ then asked whether a cashier position would be excluded, and the VE stated he may have misunderstood the interpersonal contact limitation. (ECF No. 10, p. 142). The ALJ clarified, "[m]y definition on interpersonal contact was a limited degree of interaction such as meeting and greeting the public, answering simple questions, accepting payment, making change." *Id.* After clarifying the confusion the VE testified as follows:

> Okay. I'm sorry. Yea. Yes, sir. I think that position such as cashiers at self-serve gas stations, at a cafeteria and at like ticket taggers at the movies would fall within these perimeters. Where they wouldn't be exposed to the heat. . . . positions at self-serve gas stations, attendant, cashiers at tobacco stores and at cafeterias would fall within these perimeters. Nationally there's approximately 200,000. Within the state of Arkansas there's approximately 1,100. Its DOT number is 211.462-010. And there would be some other positions in the sedentary exertional category.

*Id.*

The VE's testimony was not contradictory. The VE's testimony is clear that Plaintiff's PRW is completely different from the jobs which the VE determined the hypothetical person described by the ALJ could perform. After thoroughly reviewing the hearing transcript along with the entire evidence of record, I find that the hypothetical the ALJ posed to the VE fully set forth the impairments the ALJ accepted as true and which were supported by the record as a whole. *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, I find that the VE's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing the duties of a cashier or a food order clerk. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical

question constitutes substantial evidence).

**4.	Conclusion:**

Based on the foregoing, the undersigned finds the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 8th day of June 2017.**

>	/s/  Barry A. Bryant
>	HON. BARRY A. BRYANT
>	U. S. MAGISTRATE JUDGE